{¶ 1} John H. Warren appeals his conviction for kidnapping, a violation of R.C. 2905.01(B)(2). He asserts that his conviction is not supported by sufficient evidence. Because we find that a rational jury could have found that the State proved all the elements of kidnapping beyond a reasonable doubt, we disagree. He also asserts that his conviction is against the manifest weight of the evidence. Because we find that the jury did not clearly lose its way and create a manifest miscarriage of justice by finding Warren guilty of kidnapping, we disagree. He also asserts that the trial court erred in instructing the jury. Because we find that the trial court did not abuse its discretion in fashioning the jury instructions, we disagree. Finally, Warren argues that his counsel was ineffective. Because we find that Warren was not prejudiced by his counsel's alleged deficient performance, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Athens County Sheriff's Deputy Brad Jeffers swore out a complaint against Warren in February 2002. He alleged that Warren kidnapped six-year-old Deidra Snider in violation of R.C. 2905.01(B)(2). Later that month, the Athens County Grand Jury indicted Warren on the same charge.
 {¶ 3} At the jury trial, Deidra Snider testified that she was six years old. She explained that Warren had taped her up by putting tape on her feet, hands and mouth. She denied asking Warren to put the tape on her. She stated that she tried to get the tape off, but could not and then crawled around on her belly. She also testified that the tape was tight and hurt her.
 {¶ 4} Athens County Sheriff's Deputy Jim Thompson testified that he interviewed Warren and videotaped the interview. The State played the videotape for the jury. In the videotape, Warren explained that "We was playin and you know, well, like kick boxing you know. And she hit me on the leg and I said, you keep that up and I'm gonna tie you up. She said, okay." Several times in the videotape, Warren denied causing any harm to Deidra and stated that he would never hurt her. He also stated that Deidra had asked him to tape her hands and mouth.
 {¶ 5} Athens County Sheriff's Sergeant Jay Barrett testified that he saw red marks on Deidra's arms and cheek. He admitted that they did not take any pictures of the crime scene or of Deidra's injuries. He explained that they did not take any pictures because neither he nor the other officer on the scene had access to a camera.
 {¶ 6} Jeffers testified that he went to the residence of Carrie Conley, Deidra's mother, to serve a subpoena. Warren answered the door. As Jeffers talked with Warren, he noticed a sound coming from the floor and tried to figure out what it was. When Warren agreed to sign for the subpoena, Jeffers looked down past Warren and saw a little girl's head looking up at him. According to Jeffers, she was teary eyed, in a state of panic, and had duct tape on her mouth. He asked her whether she was okay, and she did not respond. Instead, Warren looked at Deidra and said that they were just playing a game of bullfrog. When Deidra squirmed over towards Jeffers, Jeffers discovered that her hands were taped together with duct tape. Warren permitted Jeffers inside the home and again said that they were just playing a game of bullfrog. Jeffers picked Deidra up and noticed that her ankles were also taped together with duct tape. After inspecting Deidra's hands, Jeffers concluded that the tape was very tight around her wrists. Her wrists and ankles were blue and cold. The tape was so tight that Jeffers could not simply cut it, but had to pull it off Deidra. According to Jeffers, after he removed the tape from Deidra's mouth, she was non-verbal. Once he removed all the tape, he noticed that her wrists, face, and ankles were red. Jeffers testified that Warren stated that Deidra liked to be tied up.
 {¶ 7} Jeffers also testified that restraining a person on their stomach with their arms and feet behind their back so that they cannot roll over is not permitted in police work because of the chance that the person could asphyxiate and die.
 {¶ 8} Dr. Ferdinand Fojas testified that he treated Deidra at the emergency room. Deidra's grandmother took her there. According to Fojas, Deidra was non-verbal and was not making good eye contact. He observed redness around Deidra's wrists. Dr. Fojas opined that if someone had duct taped Deidra so tightly that her hands were turning blue and cold, then she would have experienced pain and also would have suffered pain when the tape was removed.
 {¶ 9} Deidra's maternal grandparents testified that she liked to play games where she hopped. Deidra's maternal grandmother testified that Deidra told her immediately after she was released from the duct tape that she was not scared and had been playing a game called bullfrog; however, Deidra could not explain how to play this game.
 {¶ 10} The jury found Warren guilty. The trial court convicted him and sentenced him to nine years in prison.
 {¶ 11} Warren appeals and asserts the following assignments of error: "[I.] There is insufficient evidence to support the conclusion that a substantial risk of physical harm existed or that physical harm occurred under the facts in evidence, the conviction is consequently unsupported by the manifest weight of the evidence, and the trial court committed plain error in failing to dismiss. [II.] There is insufficient evidence to support the conclusion that John Warren knowingly exposed Deidra Snider to a substantial risk of severe physical harm or that he knew his actions would cause physical harm, the conviction is consequently unsupported by the manifest weight of the evidence, and the trial court committed plain error in failing to dismiss. [III.] The trial court's instructions to the jury with regard to the elements of kidnapping as charged and the application of [R.C.] 2901.22(B) constituted plain error. [IV.] Trial counsel offered ineffective assistance to appellant when he failed to object to the jury instruction given regarding [R.C.] 2905.01(B)(2), and when he failed to raise and perfect a [Crim.R.] 29 motion to dismiss with regard to the sufficiency of the evidence."
 II. {¶ 12} In his first and second assignments of error, Warren asserts that his conviction is supported by insufficient evidence and is against the manifest weight of the evidence. Because "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different," State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, we address these arguments separately.
 A. {¶ 13} Warren argues that his conviction is supported by insufficient evidence because: (1) there was no evidence that Warren created a substantial risk of serious physical harm to Deidra or that Warren caused Deidra physical harm, and (2) there is no evidence that Warren knew that he created a substantial risk of serious physical harm or knowingly caused physical harm to Deidra.
 {¶ 14} When we review the sufficiency of the evidence, we must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307.
 1. {¶ 15} We first address Warren's argument that he did not create a substantial risk of serious physical harm to Deidra or cause her physical harm.
 {¶ 16} R.C. 2905.01, the kidnapping statute, provides: "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim: * * *(2) Restrain another of his liberty."
 {¶ 17} Physical harm to a person is any "injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C.2901.01(A)(3).
 {¶ 18} Thus, the indictment, as amended at trial, required the State to prove, among other things, that John Warren knowingly either created a substantial risk of serious physical harm to Deidra, or caused physical harm to Deidra.
 {¶ 19} Here, Deidra testified that she was six years old. She also testified that the tape was tight and hurt her. Jeffers testified that Deidra's hands were cold and blue before he removed the tape. Barrett testified that he saw red marks on Deidra's arms and cheek. Dr. Fojas opined that if someone had duct taped Deidra so tightly that her hands were turning blue and cold, that she would have experienced pain and that she would also have suffered pain when the tape was removed. Viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved beyond a reasonable doubt that Warren caused Deidra some injury of any gravity or duration.
 2. {¶ 20} We next address Warren's argument that he did not possess the requisite "knowing" intent to create a substantial risk of serious physical harm to Deidra or physically harm her.
 {¶ 21} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
 {¶ 22} While Warren repeatedly told Thompson that he would never do anything to hurt Deidra and that they had just been playing a game, he did not dispute that he had used duct tape to tape Deidra's hands together, feet together, and mouth shut. Viewing the evidence presented in the light most favorable to the prosecution, we find that a rational jury could find that Warren was aware that his conduct of tightly binding Deidra's feet and her hands with sticky duct tape and placing sticky duct tape over her mouth would probably cause Deidra physical harm while it was on and when it was removed.
 3. {¶ 23} Viewing the evidence in the light most favorable to the State, we find that a rational jury could have found that the State had proven all of the elements of kidnapping beyond a reasonable doubt. Accordingly, we find that Warren's conviction is supported by sufficient evidence.
 B. {¶ 24} We next address Warren's argument that his conviction is against the manifest weight of the evidence.
 {¶ 25} In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. In making such a determination, we sit as a thirteenth juror. Thompkins at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. However, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins at 387, quoting Martin at 172.
 {¶ 26} After reviewing the entire record, we find that the jury did not clearly lose its way and create a manifest miscarriage of justice by finding Warren guilty of kidnapping. While Warren repeatedly told Thompson that he would never do anything to hurt Deidra and that they had just been playing a game, he did not dispute that he had used duct tape to tape Deidra's hands together, feet together, and mouth shut. Jeffers, Barrett and Fojas testified that there were red marks on Deidra from where the tape had been. Jeffers testified that Deidra's hands were blue and cold while they were taped together. He explained that the tape was so tight that he could not cut the tape off. Accordingly, we reject Warren's argument that his conviction was against the manifest weight of the evidence.
 C. {¶ 27} Having found that Warren's conviction is supported by sufficient evidence and that his conviction is not against the manifest weight of the evidence, we overrule Warren's first and second assignments of error.
 III. {¶ 28} In his third assignment of error, Warren argues that the trial court erred in instructing the jury on the elements of kidnapping.
 {¶ 29} A trial court has broad discretion in deciding how to fashion jury instructions. State v. Weston (July 16, 1999), WashingtonApp. No. 97CA31, unreported; State v. Blair (Dec. 4, 1997), Meigs App. No. 96CA27, unreported.
 {¶ 30} Here, Warren finds fault with the following jury instruction by the court: "The defendant is charged with one count of kidnapping. Before you can find the defendant guilty of kidnapping, you must find beyond a reasonable doubt that on or about February 2, 2002, and in Athens County, Ohio, the defendant, by any means, did knowingly restrain a victim under the age of thirteen of her liberty, under circumstances that either created a substantial risk of serious physical harm to the victim or caused physical harm. You must decide if the alleged victim in this case was under thirteen years of age at the time of the offense. If the alleged victim was under thirteen years of age, the manner or means by which the defendant accomplished the alleged act of kidnapping is immaterial."
 {¶ 31} Warren argues that these instructions could have left the jury with the impression that the required culpable mental state applied only to the element of restraint. He asserts that the trial court should have used the instruction from the Ohio Jury Instructions, Section505.01(B). This instruction reads: "The defendant is charged with kidnapping. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the ___ day of ___, ___, and in ___ County, Ohio, the defendant by (force) (threat) (deception) (any means in the case of a person [who was under the age of thirteen][who was mentally incompetent]) and under circumstances that (created a substantial risk of serious physical harm to [insert name of victim]) ([created a substantial risk of serious physical harm][caused physical harm] to [insert name of victim], who was under the age of eighteen) knowingly * * * (Use appropriate alternative[s]) * * * (B)(2) restrained (insert name of victim) of his/her liberty."
 {¶ 32} Thus, the Ohio Jury Instructions version explains the harm element, the required mental state, and then the restraint element. In contrast, the trial court's jury instruction explained the required mental state, the restraint element and then the harm element. R.C. 2905.01
explains the required mental state, restraint element (by reference to R.C. 2905.01(B)(1)-(3)), and then the harm element.
 {¶ 33} We cannot find that the trial court abused its discretion in using the order of the elements found in R.C. 2905.01. We also do not see how the different order of the elements in these instructions could have left the jury with a different impression than the Ohio Jury Instructions version. The explanation of the required mental state appeared immediately before the restraint element in both instructions. Accordingly, we overrule Warren's third assignment of error.
 IV. {¶ 34} In his fourth assignment of error, Warren argues that his trial counsel was ineffective because he failed to make a Crim.R. 29 motion to dismiss and failed to object to the jury instructions.
 {¶ 35} The Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. Furthermore, the United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington (1984), 466 U.S. 668, 687. In order to prove the ineffective assistance of counsel, a criminal defendant must show that (1) counsel's performance was in fact deficient, i.e., not reasonably competent, and (2) such deficiencies prejudiced the defense so as to deprive the defendant of a fair trial. Strickland at 687; State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 36} In reviewing Warren's previous three assignments of error, we have determined that his conviction is supported by sufficient evidence and that the trial court did not err in instructing the jury. Thus, we cannot find that Warren was prejudiced by his counsel's failure to make a Crim.R. 29 motion for acquittal and object to the jury instructions. Accordingly, we overrule his fourth assignment of error.
 V. {¶ 37} In sum, we overrule all of Warren's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 DECISION AND JUDGMENT ENTRY
Evans, P.J. and Abele, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.